UNITED STATES, Appellee,

v.

**Jeffrey M. GALLANT, Defendant, Appellant.**

**No. 93–2391.**

United States Court of Appeals,
First Circuit.

Heard May 5, 1994.

Decided June 1, 1994.

Thomas J. Connolly, Portland, ME, for appellant.

Michael M. DuBose, Asst. U.S. Atty., with whom Jay P. McCloskey, U.S. Atty., Portland, ME, was on brief, for appellee.

* Of the District of Maine, sitting by designation.

Before TORRUELLA and STAHL, Circuit Judges, and CARTER,* District Judge.

PER CURIAM.

In this appeal, defendant Jeffrey M. Gallant challenges, on three separate grounds, his sentence for manufacturing and possession of marijuana. After carefully considering defendant's arguments, we affirm.

## I.

### BACKGROUND

On May 5, 1992, Captain Tim Bourassa of the Rumford, Maine, Police Department, along with other law enforcement officers, executed a state search warrant at defendant's trailer. Pursuant to their search, the officers seized the following items: 33 marijuana plants between four and five feet in height and growing in pots; four harvested plants of the same size; 155 marijuana plants between one and three feet in height and growing in paper cups; a bag filled with dried marijuana leaves; two loaded rifles; and various other drug paraphernalia.

Subsequent to the search, Captain Bourassa stripped the seized marijuana plants, preserving the leaves and buds but destroying the stems and roots. At the time Captain Bourassa destroyed the stems and roots, defendant had only been charged with state drug offenses. Under relevant state law (and unlike federal law), the presence *vel non* of developed root systems on seized marijuana plants is irrelevant for sentencing purposes. Apparently, Captain Bourassa acted in accordance with his customary practice for the securing of marijuana evidence when he destroyed the plants' stems and roots.

Eventually, this matter was referred to a federal grand jury. The grand jury returned a four-count indictment charging defendant with manufacturing marijuana, possessing marijuana with intent to distribute, and carrying two firearms in relation to a drug trafficking crime. The case was tried to a jury and on February 12, 1993, the defendant

was found guilty on the charge of manufacturing marijuana and the lesser included offense of possessing marijuana. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 844. However, he was acquitted of possessing the marijuana with intent to distribute. The jury also acquitted defendant of the firearms charges. Subsequent to trial and prior to sentencing, the marijuana leaves which had been stripped from the seized plants (and which had been introduced into evidence at trial) also were destroyed.

A sentencing hearing originally was convened on July 28, 1993. During the course of that hearing, defendant raised several legal issues that, in the court's estimation, required further briefing. Accordingly, the court recessed the hearing and continued the proceedings to a later date. On December 9, 1993, at the reconvened hearing, the court took testimony from Captain Bourassa and other law enforcement officials regarding, *inter alia*, the number of plants seized during the search of defendant's trailer and whether those plants had developed root systems. The court also heard argument from defendant on the legal issues presented in this appeal. At the conclusion of the evidence and argument, the court rejected defendant's legal arguments and determined that 188 marijuana plants were involved in this offense. Pursuant to the provisions of and commentary on U.S.S.G. § 2D1.1, this finding resulted in a base offense level of 26. After adding two levels for possession of a firearm, subtracting two levels for acceptance of responsibility, and ascertaining that defendant had a Criminal History Category of I, the court determined that the relevant guideline sentencing range was 63–78 months. It then sentenced him to 63 months in prison, to be followed by a four-year term of supervised release. This appeal followed.

## II.

### DISCUSSION

Defendant makes three arguments on appeal. First, he contends that the destruction of the plant roots and stems prior to trial constitutes a due process violation and entitles him to a recalculation of his sentence. Similarly, defendant asserts that the destruction of the marijuana evidence that was admitted at trial deprived him of a fair sentencing hearing. Finally, defendant argues that the district court committed legal error in determining the number of plants involved in the offense. We discuss each argument in turn.

### A. Destruction of Plant Roots Prior to Trial

Defendant's first argument implicates the law of " 'what might loosely be called the area of constitutionally guaranteed access to evidence.' " *See Arizona v. Youngblood*, 488 U.S. 51, 55, 109 S.Ct. 333, 336, 102 L.Ed.2d 281 (1988) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982)). The argument is that the State, by destroying the evidence upon which defendant's sentence was premised, violated his due process rights. More specifically, defendant contends that the destruction of portions of the plants prior to trial precluded him from mounting an effective challenge to both the plant count and to Captain Bourassa's testimony that each of the plants seized had developed root systems. And, since the law looks to the number of plants and to whether there is " 'readily observable evidence of root formation' " in determining whether marijuana should be counted as a "plant" for sentencing purposes, *see United States v. Burke*, 999 F.2d 596, 601 (1st Cir.1993) (quoting *United States v. Edge*, 989 F.2d 871, 879 (6th Cir.1993)), defendant argues that this effective denial of potentially exculpatory[1] evidence prejudiced him at sentencing.

The problem with defendant's argument is that the Supreme Court has clearly stated that a State's failure to preserve potentially exculpatory evidence does not rise to the level of a due process violation unless "a criminal defendant can show bad faith on the

---

1. Defendant does not specifically assert that there were fewer than 188 plants in the trailer or that the plants seized did not have observable root formation. Rather, defendant argues that the destruction of the plants prevented him from examining evidence which *might* have impeached the law enforcement officials' testimony on these issues.

part of the police." *Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337. Here, the district court, relying at least in part on the fact that this was only a state court matter (where the presence of root formation is irrelevant for sentencing purposes) when Captain Bourassa destroyed the plant portions, explicitly and supportably found that Captain Bourassa did not act in bad faith. And, because this finding was not clearly erroneous, *cf. United States v. Barnett,* 989 F.2d 546, 556 (1st Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 148, 126 L.Ed.2d 110 *and* — U.S. ——, 114 S.Ct. 149, 126 L.Ed.2d 110 (1993)), it is dispositive here.

■ Accordingly, we reject defendant's argument that the destruction of the plant portions violated his due process rights.[2]

### B. Destruction of Evidence Admitted at Trial

■ Defendant's second argument, that he was denied a fair sentencing because the government destroyed the dried marijuana leaves that it had introduced into evidence at trial, requires little discussion. This evidence was in no way relevant to the district

court's sentencing calculation; it was the plant count, and not the weight of the dried leaves, that the district court took into account in determining defendant's sentence. Thus, as the district pointed out at sentencing, there was "no prejudice from the fact that the marijuana introduced at trial … was not available at sentencing."[3]

Accordingly, we reject defendant's argument that the destruction of this evidence somehow compromised the justness of his sentencing.

### C. Number of Plants Involved in the Offense

■ Defendant's third and final argument is that the district court erred in taking the 155 smaller plants into account in determining that 188 plants were involved in his crimes. As noted above, *see supra* note 1, defendant does not specifically allege that fewer than 155 plants between one and three feet in height were present in the trailer. Rather, he argues that the court applied an overly broad definition of the word "plant" in deciding that the 155 plants should be included in its drug quantity determination. Relying upon testimony that only female marijua-

2. In his brief, defendant makes two additional and related arguments. First, defendant perfunctorily asserts that the *Youngblood* bad faith requirement does not obtain where there has been a deliberate (as opposed to an accidental) destruction of evidence. We see no merit in this argument. Neither *Youngblood* itself, nor its organizing principle, suggest that the act by which the potentially exculpatory evidence is destroyed need be inadvertent. The *Youngblood* Court was concerned with "limit[ing] the extent of the police's obligation to preserve evidence to reasonable bounds and confin[ing] it to that class of cases in which the police themselves by their conduct indicate that the [destroyed] evidence could form a basis for exonerating the defendant." *Id.* 488 U.S. at 58, 109 S.Ct. at 337. Mere intentionality in the act of destruction does not indicate a tendency to exonerate; after all, a police officer can intentionally destroy evidence he/she truly believes is irrelevant. *Something more* is clearly needed, and the Court has determined that that something should be a demonstration of bad faith.

Defendant also seems to be arguing that the federal authorities' decision to proceed against him subsequent to the destruction of the plants' roots *in and of itself* gives rise to an inference of exploitation, constitutes bad faith, and should be considered a due process violation. To the ex-

tent that he is so arguing, the argument is specious. We simply are at a loss to see any merit in a rule whereby we would infer bad faith on the part of government prosecutors merely because they bring a prosecution *after* State authorities have destroyed some potentially relevant or exculpatory evidence. In this context at least, bad faith cannot be inferred; instead, we think it clear that a successful prosecutorial misconduct argument must be premised upon independent evidence that the prosecution was somehow improperly motivated. Here, there was no such evidence.

3. Without explanation, defendant asserts that the destruction of the leaves "hindered [his] ability to challenge the plant count as to the 155 seedlings." Although it is not entirely clear, it appears that the point defendant is driving at is that the amount of leaves *may have* somehow appeared inconsistent with a finding that 155 plants between one and three feet in height were involved in his crimes. This argument is not persuasive. First of all, a mass of removed and dried leaves is, at best, only marginally probative on the question of how many plants it took to generate the leaves. And, to the extent that it is probative, the sentencing judge, who presided at trial and viewed the leaves at that time, had an ample opportunity to take it into account in making his drug quantity determination.

na plants have commercial value and that male marijuana plants are eventually weeded out by marijuana distributors, and asserting that the 155 plants had not yet been sexually differentiated because of their growth stage, defendant contends that the 155 plants should be not considered a "mixture or substance," *see* 21 U.S.C. §§ 841(b)(1)(A)(vii) *and* 841(b)(1)(B)(vii), which can be taken into account for sentencing purposes. *See* U.S.S.G.App. C, Amd't 484 (1993) ("mixture or substance" for purposes of § 841 "does not include materials that must be separated from the controlled substance before the controlled substance can be used").

While ingenious, defendant's argument fails for several reasons. First, 21 U.S.C. § 841 clearly distinguishes between "a mixture or substance containing a detectable amount of marihuana" and "marihuana plants." *See* 21 U.S.C. §§ 841(b)(1)(A)(vii) *and* 841(b)(1)(B)(vii). The statute does not use the term "mixture or substance" in relation to marijuana plants. *See id.* Therefore, the amendment upon which defendant relies does not apply in the context of marijuana plants.

Moreover, although we have yet to address defendant's specific gender-distinction argument, we have, in a very similar context, rejected an argument that plants which would be weeded out prior to distribution should not be included in the drug quantity determination at sentencing. *See United States v. McMahon,* 935 F.2d 397, 399 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 272, 116 L.Ed.2d 224 (1991). The primary reason underlying our rejection of defendant's argument in *McMahon* applies to this case with equal force: " 'Congress intended to punish growers of marihuana by the scale or potential of their operation and not just by the weight [or size] of the plants seized at a given moment.' " *Id.* at 401 (quoting *United States v. Fitol,* 733 F.Supp. 1312, 1315 (D.Minn.1990)). Here, as in *McMahon,* Congress's intent must be given effect.

Finally, we note that three of our sister circuits have rejected nearly identical gen-

der-distinction challenges. *See United States v. Proyect,* 989 F.2d 84, 86–88 (2nd Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 80, 126 L.Ed.2d 49 (1993); *United States v. Curtis,* 965 F.2d 610, 616 (8th Cir.1992); *United States v. Webb,* 945 F.2d 967, 968–69 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1228, 117 L.Ed.2d 463 (1992). We find the reasoning of these cases persuasive and applicable to the argument before us.

Accordingly, we reject defendant's assertion that the court erred in including the 155 smaller plants in its drug quantity calculation.

### III.

### CONCLUSION

Finding each of defendant's appellate arguments unpersuasive, we affirm his sentence.[4]

*Affirmed.*

---

**4.** Our opinion should not, of course, be construed as endorsing the destruction of evidence that took place here. We think it obvious that law enforcement officials wade into dangerous waters when they eliminate evidence which has even a remote potential for being relevant at trial or sentencing. This is especially true where, as here, inexpensive means of memorializing the nature of the evidence (e.g., photographs or videotape) are widely available.