# United States Court of Appeals
## For the First Circuit

No. 04-2400

UNITED STATES OF AMERICA,

Appellee,

v.

VICTOR GARZA,

Defendant, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

_____

Before
Boudin, Chief Judge,
Lipez, Circuit Judge,
and Schwarzer,[*] Senior District Judge.

_____

Jeffrey S. Levin, Assistant Federal Public Defender, Federal Defender Office, for appellant.
Mark E. Howard, Assistant United States Attorney, with whom Thomas P. Colantuono, United States Attorney, was on brief for appellee.

_____

January 24, 2006

_____

[*]Of the Northern District of California, sitting by designation.

**SCHWARZER, <u>Senior District Judge</u>**.  Victor Garza appeals his conviction on two counts of distribution of crack cocaine.  At trial, he claimed to have been a victim of mistaken identity, contending that it was his uncle Alejandro who participated in the drug deals for which he was convicted, not Garza.  The jury rejected the claim and convicted Garza.  On appeal Garza raises three contentions: that he was denied due process by reason of the state's destruction of the drugs and tape recordings which were evidence of the drug deals; that the district court erred in admitting a transcript of the lost tapes; and that the statute of limitations had run before Garza was brought to trial.  Finding none of the contentions to have merit, we affirm the conviction.

## I.    DUE PROCESS VIOLATION

The drug transactions underlying Garza's convictions were "controlled buys" organized and arranged by Sergeant Robert Quinn, a narcotics officer with the New Hampshire State Police, with the help of an informant.  These buys took place in 1996.  Garza was not apprehended until 2004.

The evidence collected from these buys consisted of the drugs purchased, as well as a tape recording of a telephone conversation between the informant and the drug seller, and a second tape recording of a brief conversation during the exchange of drugs for money in the informant's apartment while Sergeant Quinn was in the apartment.  The drugs and the tapes were stored in

the State Police Forensic Laboratory.  Pursuant to its regular practice, the laboratory from time to time sent out a list of evidence items in its possession that might be disposed of, either because a case has been closed, or is stale, or has been abandoned. Sergeant Quinn regularly received this list from the laboratory and until 2002 directed the lab to retain the evidence from Garza's case.  In 2002, when the case was again listed, Sergeant Quinn authorized destruction of the drugs.  The laboratory then applied for a court order authorizing destruction.  The order was issued and the drugs were destroyed.  Unbeknownst to Quinn, the laboratory also destroyed the tape recordings.  Two years later Garza was apprehended and the government proceeded to trial on the charges.

Garza moved to dismiss the charges, arguing that the destruction of the evidence violated his due process rights.  After an evidentiary hearing, the district court denied the motion. It found that the evidence was only potentially useful, not materially exculpatory, to Garza and, that while the destruction was negligent, there was "little suggestion of bad faith."

On appeal, Garza contends that the district court erred in finding no bad faith.  He argues that Sergeant Quinn's deliberate destruction of evidence he knew to be relevant to a still open case, contrary to the usual procedure, compels a finding of bad faith. We review the district court's fact findings for clear error and its legal conclusions de novo.  See United States

-3-

v. <u>Gallant</u>, 25 F.3d 36, 39 (1st Cir. 1994) (applying clearly erroneous standard to district court's conclusions regarding bad faith).

In <u>California</u> v. <u>Trombetta</u>, 467 U.S. 479 (1984), the Supreme Court held that for destruction or loss of evidence to constitute a constitutional violation, "the evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." <u>Id.</u> at 489.  In <u>Arizona</u> v. <u>Youngblood</u>, 488 U.S. 51 (1988), the Court further held that where lost or destroyed evidence is deemed to be only potentially exculpatory, as opposed to apparently exculpatory, the defendant must show that the evidence was destroyed in bad faith.  <u>Id.</u> at 58.

Garza does not challenge the district court's determination that the drugs and tapes were only potentially exculpatory, not apparently exculpatory.  But he maintains that under the circumstances of this case, Sergeant Quinn's authorization of destruction of the evidence amounts to bad faith.

While the evidence was destroyed as a result of Quinn's conscious and deliberate decision, intentionality is not enough to show bad faith.  <u>Gallant</u>, 25 F.3d at 39 n.2.  Even if, as found by the district court, Sergeant Quinn's actions were "short-sighted and even negligent," this does not satisfy the requirement of bad faith.

See <u>United States</u> v. <u>Femia</u>, 9 F.3d 990, 995 (1st Cir. 1993) (holding that the "district court clearly erred in finding a due process violation because [the evidence] was destroyed due to the government's gross negligence, not bad faith"). Garza must show "independent evidence that the [government] was somehow improperly motivated." <u>Gallant</u>, 25 F.3d at 39 n.2. Sergeant Quinn's apparent desire to free up space in the laboratory was not an improper motivation. Moreover, that the evidence was destroyed in the course of implementing routine procedures militates against a finding of bad faith. See <u>United States</u> v. <u>Lewis</u>, 40 F.3d 1325, 1340 (1st Cir. 1994) (finding no bad faith in routine destruction of surveillance tapes); <u>United States</u> v. <u>Arra</u>, 630 F.2d 836, 849 (1st Cir. 1980) (holding that erasure of Coast Guard tapes was done in good faith as part of a routine that was not related to the case). Here, Quinn did not single out the evidence in Garza's case, but authorized its destruction only after the laboratory had repeatedly placed the case on a list of old cases for the purpose of purging the storage facility. While Garza argues that it was not "normal" procedure to destroy evidence in cases that were still open, there is no evidence that Quinn was motivated by malice or bad faith in authorizing the destruction. Nor does the fact that the evidence was destroyed before trial support a finding of bad faith. See <u>Illinois</u> v. <u>Fisher</u>, 540 U.S. 544, 548 (2004) (finding no due process violation in destruction of evidence even though defendant had requested the

evidence prior to becoming a fugitive); Trombetta, 467 U.S. at 482-83, 488 (finding no bad faith where evidence was destroyed before defendants were charged); Femia, 9 F.3d at 991-92, 994 (finding no bad faith where evidence was destroyed even though defendant had been charged and remained a fugitive); Picariello, 568 F.2d 222, 227-28 (finding no bad faith where evidence was destroyed four months prior to trial).

Garza seeks to avoid a bad faith hurdle by arguing that the destruction of the evidence constitutes a violation of Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976). His premise is that Youngblood and Trombetta apply to situations where the police authorize destruction of evidence, as opposed to authorization by a *prosecutor*. Whenever the prosecutor authorizes destruction of evidence, he contends, Brady applies, requiring no showing of bad faith. Here, Garza argues, because Sergeant Quinn may have spoken to a prosecutor who may have authorized destruction of the evidence, due process was violated regardless of whether there was bad faith.

Garza misapprehends the distinction between the Brady and Youngblood lines of cases. That distinction rests on the nature of the evidence and whether or not the evidence is still in existence, not who authorized destruction of the evidence. "Brady and its progeny address exculpatory evidence still in the government's possession. Youngblood . . . govern[s] cases in which the

-6-

government no longer possesses the disputed evidence." Femia, 9 F.3d at 993.

For a Brady violation to occur, the evidence must be not only in existence but also materially exculpatory. Agurs, 427 U.S. at 105-06. Here, the district court found that the evidence was, at best, only potentially exculpatory, and Garza has not challenged that determination.

We conclude that the district court did not err in denying Garza's motion to dismiss.

## II. READING OF THE TRANSCRIPTS

At trial the government offered the transcripts of the tape recordings. Garza objected for lack of authentication. The district court did not receive the transcripts into evidence but permitted the government to read them to the jury, holding that they constituted past recollection recorded admissible under Federal Rule of Evidence 803(5). While Garza argues that the district court erred, we need not address this issue for the government defends the ruling on a different ground.

The government argues that the transcripts were admissible as party admissions under Rule 801(d)(2)(A), exempting from the hearsay rule a party's own statement when offered against that party. The government argues here that there was sufficient evidence to establish, for admissibility purposes, that the transcript included Garza's admissions. While this rationale was

not addressed by the district court, this court may affirm the admission of evidence on a ground that the district court did not consider. See United States v. Cabrera-Polo, 376 F.3d 29, 31 (1st Cir. 2004).

Admitting the transcripts on the ground that they contain statements by Garza is not inconsistent with trying Garza's defense that he was not involved in the drug deals. That is because the evidentiary requirement for testing the admissibility of evidence differs from that governing criminal liability. "The inquiry made by a court concerned with these matters is not whether the proponent of the evidence wins or loses his case on the merits, but whether the evidentiary Rules have been satisfied. Thus, the evidentiary standard is unrelated to the burden of proof on the substantive issues." Bourjaily v. United States, 483 U.S. 171, 175 (1987). Questions of admissibility are decided by the court, Fed. R. Evid. 104(a), using the preponderance of the evidence standard. Bourjaily, 483 U.S. at 175-76. So long as there is a preponderance of evidence indicating that it was Garza's voice on the tapes, the transcripts could be treated as containing his admission. See United States v. Newton, 891 F.2d 944, 947 (1st Cir. 1989) (finding sufficient circumstantial evidence to support admission of a document as a party admission where the defendant denied being the author of the document); see also United States v. Lang, 364 F.3d 1210, 1222-23 (10th Cir. 2004) ("the government need only prove by

a preponderance of the evidence that [the defendant] made the statements in question"), vacated, 125 S. Ct. 986, reinstated 405 F.3d 1060, 1061 (10th Cir. 2005). Here, both the informant and Sergeant Quinn identified Garza as the individual who sold the drugs. Both testified to the phone call to Garza and the placement of a recording device in the bedroom where the drug transaction took place. These facts sufficed to support a finding by a preponderance of the evidence that Garza made the transcribed statements.

Even if the district court erred in allowing the transcripts to be read to the jury, the error was harmless. "A non-constitutional evidentiary error is harmless (and, therefore, does not require a new trial) so long as it is highly probable that the error did not influence the verdict." United States v. Piper, 298 F.3d 47, 56 (1st Cir. 2002). It is highly unlikely that the reading of the transcripts influenced the verdict. The transcripts merely described the setup and execution of a drug deal between a confidential informant and a drug seller. Garza's defense was not that the call and drug deal did not occur but that they involved someone else. The court instructed the jury that the transcripts were not evidence to be considered in deciding that issue. Garza was not prejudiced by the reading of the transcript to the jury.

**III. STATUTE OF LIMITATIONS**

In an additional pro se brief, Garza contends that because the drug sales occurred in 1996, more than five years before his

trial, the prosecution was barred by the statute of limitations. Title 18 U.S.C. § 3282(a) divests a federal court of jurisdiction over a non-capital offense committed more than five years <u>before</u> <u>an</u> <u>indictment</u> <u>is</u> <u>found</u> or an information instituted. Garza was indicted on July 10, 1996, less than one month after the drug transactions. At all times prior to Garza's arrest and trial, the indictment remained pending.[1]

Garza's contention that there was no sufficient indictment is belied by the record, which includes the indictment. If there were any defects in the indictment, the failure to raise an objection before trial constitutes a waiver. Fed. R. Crim. P. 12(b)(2); <u>United States</u> v. <u>Rodriquez-Marrero</u>, 390 F.3d 1, 11-12 (1st Cir. 2004).

### CONCLUSION

For the reasons stated, the conviction and judgment are

---

[1]As Garza's pro se brief broadly characterizes this delay as a violation of his Fifth and Sixth Amendment rights, we consider whether this delay violated Garza's Sixth Amendment right to a speedy trial. From statements made at the sentencing hearing, it appears that Garza was in Mexico for seven and a half of the eight years between his indictment and arrest. The government contacted Garza's family in New Hampshire over the years, unsuccessfully trying to find Garza. Garza was arrested at the first practical opportunity, when he illegally re-entered the country in February 2004. After his arrest, the government acted promptly in transferring Garza to New Hampshire and bringing this case to trial. Under these facts, there is no showing that the government failed to exercise diligence, and therefore no violation of Garza's right to a speedy trial. <u>See</u> <u>United States</u> v. <u>Casas</u>, 356 F.3d 104, 113 (1st Cir. 2004).

-10-

affirmed.

**<u>Affirmed</u>**.