# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ERIC DEAN WODKOWSKI,

        Defendant-Appellant.

UNPUBLISHED
March 15, 2018


No. 335789
Alpena Circuit Court
LC No. 15-006514-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ERIC DEAN WODKOWSKI,

        Defendant-Appellant.

No. 338042
Alpena Circuit Court
LC No. 16-007148-FH

---

Before: SAWYER, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

Defendant was charged with several offenses in two different cases that were consolidated for trial. In LC No. 15-006514-FH (the "2014 case"[1]) a jury convicted defendant of conspiracy to manufacture methamphetamine, MCL 750.157a(a) and MCL 333.7401(2)(b)(*i*), unlawful manufacture of methamphetamine, MCL 333.7401(2)(b)(*i*), operating or maintaining a methamphetamine laboratory, MCL 333.7401c(2)(f), operating or maintaining a methamphetamine laboratory involving hazardous waste, MCL 333.7401c(2)(c), and operating or maintaining a methamphetamine laboratory within 500 feet of a residence, MCL 333.7401c(2)(d). In LC No. 16-007148-FH (the "2016 case"), the jury convicted defendant of operating or maintaining a methamphetamine laboratory in the presence of a minor, MCL

---

[1] Although defendant was not charged in this case until 2015, the charged offenses were allegedly committed in 2014.

333.7401c(2)(b), unlawful manufacture of methamphetamine, MCL 333.7401(2)(b)(*i*), operating or maintaining a methamphetamine laboratory, MCL 333.7401c(2)(f), operating or maintaining a methamphetamine laboratory involving hazardous waste, MCL 333.7401c(2)(c), operating or maintaining a methamphetamine laboratory within 500 feet of a residence, MCL 333.7401c(2)(d), and unlawful possession of methamphetamine, MCL 333.7403(2)(b)(*i*). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 6-1/2 to 40 years for each of the convictions in the 2014 case, and to concurrent prison terms of 6 to 40 years for each of the convictions in the 2016 case. The trial court ordered that defendant's sentences in the 2014 case were to be served consecutive to his sentences in the 2016 case. In Docket No. 335789 defendant appeals as of right his convictions and sentences in the 2014 case, and in Docket No. 338042 he appeals as of right his convictions and sentences in the 2016 case. The appeals have been consolidated. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

In September 2014, the Michigan State Police received information that defendant and his daughter were manufacturing methamphetamine. Officers began surveilling defendant and monitoring both his and his daughter's purchases of pseudoephedrine, a necessary ingredient in producing methamphetamine. Officers learned that defendant and his daughter were purchasing pseudoephedrine multiple times on the same day, or within a few days of each other, at different pharmacies. Videotape obtained from one pharmacy showed defendant purchasing both pseudoephedrine and lithium batteries, another ingredient in the production of methamphetamine. Officers surveilled defendant traveling to a residence at 15553 Spratt Road in Lachine, which the Secretary of State's office listed as the address for both defendant and his daughter. The residence, which was owned by defendant's mother, contained a mobile home, a detached garage where defendant was believed to be living, and other outbuildings.

In anticipation of executing a search warrant that had already been drafted, officers conducted surveillance and observed defendant drive into the parking lot of a market with an attached restaurant. Officers arrested defendant inside the restaurant for driving with a suspended license and for suspicion of manufacturing methamphetamine. The officers returned with defendant to the Spratt Road address, where a protective sweep of the mobile home and garage was conducted. The investigating officer, as well as members of the Huron Undercover Narcotics Team (HUNT), maintained security at the residence while waiting for another officer to arrive with a search warrant. After the signed search warrant was obtained, the methamphetamine response team searched the detached garage, where they discovered several items used for manufacturing methamphetamine, including coffee filters containing white residue, tubing, syringes, and cotton swabs. In a detached shed, they located lithium battery husks, lye, and drain opener. They also found pop bottles[2] that tested positive for ammonia in a fire pit next to the detached garage, and they found a Coleman fuel bottle near a shed.

---

[2] Testimony indicated that 20-ounce pop bottles are used in the "one-pot" method of manufacturing methamphetamine.

Defendant was arrested and jailed after the search, but was eventually released on bond. In November 2015, while on bond, defendant was living with his formerly estranged wife and his four-year-old granddaughter at 2249 Second Street in Lachine. The police began receiving information that defendant was again manufacturing methamphetamine, so they again monitored his purchases of pseudoephedrine. Police also received information from another resident of the county who claimed to have assisted defendant in the manufacture of methamphetamine by making purchases of pseudoephedrine. Based on this information, police obtained a warrant for defendant's arrest for the over-purchase or attempted over-purchase of pseudoephedrine after defendant was "blocked" for attempting to purchase pseudoephedrine after having purchased the monthly limit of pseudoephedrine. They learned that defendant again attempted to purchase pseudoephedrine on March 8, 2016. On March 9, officers located defendant in the front yard of his residence on Second Street. As officers were arresting defendant, another individual known to have a suspended driver's license drove up in a vehicle. The individual gave officers consent to search his vehicle, in which an officer found a single work glove with a hypodermic needle inside. An officer also observed a can of Coleman fuel outside the garage. Given this evidence, the officer decided to obtain a search warrant to execute that night. He performed a protective sweep of the residence before leaving the scene to obtain a warrant. Other officers secured the scene until the warrant was obtained.

The methamphetamine response team arrived and searched the Second Street premises. Officers discovered several items used for manufacturing methamphetamine in the garage, including coffee filters, tubing, a mask, pipe cutters, and a funnel. Near the driveway, they located a burnt lithium battery husk and a receipt showing the purchase of lithium batteries. Officers also found cold packs, another necessary ingredient for the production of methamphetamine, and one-pots. Three items seized during the search were analyzed at the state crime lab and each tested positive for methamphetamine. Defendant was convicted and sentenced as stated above. This appeal ensued.

II. ANALYSIS

A. JOINDER

On appeal, defendant first argues that the trial court erred by joining the offenses charged in the 2014 case and the offenses charged in the 2016 case for trial. Whether joinder is appropriate is a mixed question of fact and law. *People v Williams*, 483 Mich 226, 231, 769 NW2d 605 (2009). "To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate." *Id*. This Court reviews a trial court's factual findings for clear error and its interpretation of a court rule, which is a question of law, de novo. *Id*. However, the ultimate decision on permissive joinder of related charges lies "firmly within the discretion of trial courts." See *People v Breidenbach*, 489 Mich 1, 14; 798 NW2d 738 (2011).

"[T]he court may join offenses charged in two or more informations or indictments against a single defendant . . . when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense." MCR 6.120(B). "Joinder is appropriate if the offenses are related." MCR 6.120(B)(1). In order to be related for purposes of MCR 6.120(B), offenses must be either part of "the same conduct or transaction," MCR

6.120(B)(1)(a), "a series of connected acts," MCR 6.120(B)(1)(b), or "a series of acts constituting parts of a single scheme or plan," MCR 6.120(B)(1)(c). If the offenses are not related, the court must sever the charges on motion by the defendant. MCR 6.120(C).

Here, the offenses in both cases involved defendant engaging in ongoing acts constituting parts of his overall scheme to manufacture methamphetamine. In 2014, the police received information that defendant was manufacturing methamphetamine. The police determined that defendant was staying at the Spratt Road address and searched the property. During the search, components and items commonly used to manufacture methamphetamine were found. After defendant was arrested for the offenses and subsequently released on bond pending trial, the police received information that defendant was again manufacturing methamphetamine. The police learned that defendant was living at the Second Street address, and they searched that property. They again found components and items commonly used to manufacture methamphetamine. In light of the timing and considering the similarity of the circumstances surrounding the offenses, the trial court properly found that the offenses were related under MCR 6.120(B)(1)(c). Consequently, the trial court did not clearly err in finding that the offenses committed in 2014 at the Spratt Road address and those committed in 2016 at the Second Street address were related under MCR 6.120(B)(1)(c). Therefore, joinder was permissible, and the trial court did not abuse its discretion to join the two cases for trial. *Breidenbach*, 489 Mich at 14.

## B. DOUBLE JEOPARDY

Defendant next argues that his multiple convictions under MCL 333.7401c(2)(d), (d), and (f) in the 2014 case, and his multiple convictions under the same subsections as well as under MCL 333.7401c(2)(b) in the 2016 case violate his double jeopardy protection against multiple punishments for the same offense. Defendant's double jeopardy challenge is an issue of constitutional law that we review de novo on appeal. *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008).

The United States and Michigan Constitutions both protect a criminal defendant from being twice placed in jeopardy, or subject to multiple punishments, for the same offense. US Const, Am V; Const 1963, art 1, § 15; *People v Lett*, 466 Mich 206, 213; 644 NW2d 743 (2002). Whether two offenses constitute the "same offense" is determined under the "same elements" test set forth in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 2d 306 (1932). *People v Smith*, 478 Mich 292, 315-316; 733 NW2d 351 (2007). Under that test, if each offense requires proof of a fact that the other does not, there is no double jeopardy violation. *Id*. at 306-307.

MCL 333.7401c prohibits a person from owning or possessing a place or area, or owning or possessing any chemical or laboratory equipment, knowing or having reason to know that it will be used to manufacture a controlled substance, including methamphetamine. The statute further provides for increased punishment if aggravating circumstances are present. MCL 333.7401c(2) provides:

A person who violates this section is guilty of a felony punishable as follows:

-4-

(a) Except as provided in subdivisions (b) to (f), by imprisonment for not more than 10 years or a fine of not more than $100,000.00, or both.

(b) If the violation is committed in the presence of a minor, by imprisonment for not more than 20 years or a fine of not more than $100,000.00, or both.

(c) If the violation involves the unlawful generation of, treatment, storage, or disposal of a hazardous waste, by imprisonment for not more than 20 years or a fine of not more than $100,000.00, or both.

(d) If the violation occurs within 500 feet of a residence, business establishment, school property, or church or other house of worship, by imprisonment for not more than 20 years or a fine of not more than $100,000.00, or both.

\* \* \*

(f) If the violation involves or is intended to involve the manufacture of a substance described in section 7214(c)(ii ), by imprisonment for not more than 20 years or a fine of not more than $25,000.00, or both.

In the 2014 case, defendant was charged with, and convicted of, violating three different aggravating factors: § 7401c(2)(c), § 7401c(2)(d), and § 7401c(2)(f). In the 2016 case, he was charged with, and convicted of, violating the same three aggravating factors, plus an additional aggravating factor under § 7401c(2)(b).

In the trial court and on appeal, defendant relied on *People v Meshell*, 265 Mich App 616; 696 NW2d 754 (2005), in support of his double jeopardy argument. In *Meshell*, the defendant was convicted of operating a methamphetamine laboratory under MCL 333.7401c(2)(a), and operating a methamphetamine laboratory within 500 feet of a residence under MCL 333.7401c(2)(d). *Id*. at 618. This Court held that the two offenses were the "same offense." *Id*. at 628. This Court examined the statutory language and concluded (1) that the offense of operating a methamphetamine laboratory did not contain an element different from operating a methamphetamine laboratory within 500 feet of a residence, and (2) that the structure of the statute indicated that the Legislature did not intend multiple punishments for these two offenses. *Id*. at 631. This Court reasoned that "[g]iven that the elements of operating or maintaining a methamphetamine laboratory are encompassed within the elements of operating or maintaining a methamphetamine laboratory within five hundred feet of a residence, the presumption is that the Legislature did not intend multiple punishments." *Id*. This Court concluded that MCL 333.7401c(1) provides the base elements of the statute and that MCL 333.7401c(2)(b) − (f) provide for increased punishment based on certain aggravating factors. *Id*. at 632.

However, after this Court decided *Meshell*, the Legislature amended MCL 333.7401c.[3] Our Supreme Court considered the amended statute in the context of a similar double jeopardy claim in *People v Routley*, 485 Mich 1075; 777 NW2d 160 (2010).[4] In *Routley*, the defendant was convicted under both MCL 333.7401c(2)(d) and (2)(f). In his application to the Supreme Court, the defendant argued for the first time that these convictions violated his protection against double jeopardy under the same elements test. *Routley*, 485 Mich at 1075. The Court rejected that argument, holding in part as follows:

> [E]ven if defendant's double jeopardy challenge had been preserved, we would conclude that each offense requires proof that the other does not. Here, § 7401c(2)(f) requires proof that the laboratory involved "the manufacture of a substance described in section 7214(c)(ii)," which specifically proscribes only methamphetamine and "its salts, stereoisomers, and salts of stereoisomers," and § 7401c(2)(d) does not; and § 7401c(2)(d) requires proof that the laboratory was "within 500 feet of a residence," and § 7401c(2)(f) does not. [*Id*. at 1075-1076.]

Similarly, in the present case, each offense at issue required proof of a fact that the other offenses did not require. That is, defendant was convicted under the same base offense of violating MCL 333.7401c(1)(a) or (b), but under different aggravating circumstances. In the 2014 case, the first aggravating circumstance was that the violation involved hazardous waste, contrary to § 7401c(2)(c). The second aggravating circumstance was that the violation occurred within 500 feet of a residence, contrary to § 74012(c)(d). The third aggravating circumstance was that the violation involved the manufacture of not just any controlled substance, but the manufacture of methamphetamine, contrary to § 7401c(2)(f). In the 2016 case, the same aggravating circumstances were present, as well as the fourth aggravating circumstance that the violation occurred in the presence of a minor, contrary to § 7401c(2)(b). Because each offense required proof of a fact that the others did not, there was no double jeopardy violation. *Routley*, 485 Mich at 1075-1076; *Smith*, 478 Mich at 315-316.

## C. MOTION TO SUPPRESS

Defendant next argues that the trial court erred by denying his motion to suppress the evidence obtained during the 2014 and 2016 searches because the "searching" at each location began without a signed search warrant. Defendant did not move to suppress the evidence on this ground in the trial court. We therefore review this unpreserved argument for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

---

[3] See 2003 PA 310, effective April 1, 2004.

[4] A Supreme Court order is binding if it is "a final Supreme Court disposition of an application, and the order contains a concise statement of the applicable facts and the reason for the decision." *People v Crall*, 444 Mich 463, 464 n 8; 510 NW2d 182 (1993). The Court's order in *Routley* satisfies that standard, and therefore, is binding.

It is unclear whether defendant is arguing that the protective sweeps performed by the police before the search warrants were signed amounted to improper warrantless searches, or whether the actual searches of the premises were improper because they were conducted before the magistrate found probable cause and signed the search warrants. With respect to the latter argument, the record clearly reveals that both the 2014 search of the premises and the 2016 search of the premises began after a signed search warrant was obtained. Although an unsigned copy of the search warrant was left at the residence after the 2016 search, the testimony established that a magistrate had signed the warrant before the search began and that an extra unsigned copy of the warrant was inadvertently left at the residence. Any failure to comply with MCL 780.655(1), which requires that officers conducting a search pursuant to a warrant give a copy of the warrant to the person from whose premises property was taken or leave a copy of the warrant at the premises searched, does not render the search illegal or require exclusion of evidence seized during the search. *People v Sobczak–Obetts*, 463 Mich 687, 708, 710; 625 NW2d 764 (2001). "The requirements of [MCL 780.655(1)] are ministerial in nature, and do not in any way lead to the acquisition of evidence; rather, these requirements come into play only after evidence has been seized pursuant to a valid search warrant." *Id*. at 710. Therefore, "[b]ecause the exclusionary rule pertains to evidence that has been illegally seized, it would not be reasonable to conclude that the Legislature intended to apply the rule to a violation of the postseizure, administrative requirements of [MCL 780.655(1)]." Accordingly, failure to leave a signed copy of the search warrant does not, by itself, render the warrant invalid, or the search unreasonable, nor does it require exclusion of items seized during the search.

Defendant also seems to suggest that the officers' protective sweeps of the residences before a warrant was obtained in each case were illegal. The United States and Michigan Constitutions both guarantee the right of citizens to be free from unreasonable searches and seizures. See US Const, Am IV; Const 1963, art 1, § 11. The lawfulness of a search or seizure depends on its reasonableness. *Illinois v McArthur*, 531 US 326; 121 S Ct 946; 148 L Ed 2d 838 (2001); *People v Snider*, 239 Mich App 393, 406; 608 NW2d 502 (2000). As a general rule, searches conducted without a warrant are per se unreasonable under the Fourth Amendment unless the police conduct falls under one of the established exceptions to the warrant requirement. *People v Borchard-Ruhland*, 460 Mich 278, 293-294; 597 NW2d 1 (1999). "The Fourth Amendment allows a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v Buie*, 494 US 325, 337; 110 S Ct 1093; 108 L Ed 2d 276 (1990); *People v Cartwright*, 454 Mich 550, 556-557; 563 NW2d 208 (1997). "Such a search is quick and limited, and conducted for the sole purpose of ensuring the safety of police officers and other persons." *Cartwright*, 454 Mich at 557.

In the 2014 search, officers arrested defendant at a restaurant then traveled to the Spratt address to secure the scene for the safety of the officers. Because this was not an in-home arrest, the protective sweep of the residence and detached garage without a warrant was improper under *Buie*. However, the record reveals that no evidence obtained during this initial entry was presented to or affected the magistrate's decision to issue the warrant. Because a valid search warrant was obtained on information unaffected by the improper protective sweep, the illegal search does not require suppression of the evidence. *People v Smith*, 191 Mich App 644, 648; 478 NW2d 741 (1991) (under the independent source doctrine, "if nothing seen by the officers

-7-

upon their initial entry either prompted the officers to seek a warrant or was presented to the magistrate *and* affected the decision to issue the warrant, the evidence need not be suppressed").

In the 2016 search, officers arrested defendant in the front yard of his residence on Second Street. Another person arrived at the scene and had a hypodermic needle in his vehicle. Officers observed a Coleman fuel can sitting outside the garage, and there was an unknown vehicle outside the residence. An officer conducted a protective sweep and then left the scene to obtain a warrant and then have it signed by a magistrate while other officers secured the scene until the search warrant was signed. Officers testified that the reasons behind the protective sweep were make certain there were no dangerous people present. This protective sweep was proper under *Buie.* Furthermore, as in the 2014 search, the search warrant affidavit did not include anything that the officers observed during the protective sweep and nothing was presented to or affected the magistrate's decision to issue the warrant. Even if we were to decide that there existed no specific and articulable facts that could lead police to suspect that dangerous or armed people were present, under the independent source rule, because nothing that the officers saw was presented to the magistrate or caused them to secure a warrant, suppression of the evidence would not be required. *Smith*, 191 Mich App at 648.

## D. DESTRUCTION OF EVIDENCE

Defendant argues that the trial erred in denying his motion to suppress evidence on the additional ground that his right to due process was violated when the police destroyed evidence related to the methamphetamine labs before defendant could examine it. "[W]hen considering a trial court's ruling on a motion to suppress evidence," "[w]e review a trial court's findings of fact for clear error, giving deference to the trial court's resolution of factual issues." *People v Bolduc*, 263 Mich App 430, 436; 688 NW2d 316 (2004). However, we review de novo a trial court's ultimate decision on a motion to suppress. *Id*.

Where the government fails to preserve evidence whose exculpatory value is indeterminate and only "potentially useful" to a defendant, the defendant must show that the government acted in bad faith in failing to preserve the evidence. *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988). The defendant bears the burden of showing that the police acted in bad faith. *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). A showing that evidence was destroyed in the course of a routine procedure generally contravenes a finding of bad faith. *United States v Garza*, 435 F3d 73, 75 (CA 1, 2006). See also *Johnson*, 197 Mich App at 365 (the routine destruction of taped police broadcasts, where the purpose is not to destroy evidence for a forthcoming trial, does not mandate reversal).

Defendant concedes that "nothing in the record indicates that the destruction of the evidence was motivated by 'bad faith.' " The destroyed evidence consisted of various items used in the production of methamphetamine, including one-pot vessels, gel packs, Coleman fuel, lithium battery husks, coffee filters, drain cleaner, and tubing. Officers testified that the items were destroyed pursuant to federal and state policy regarding the handling of hazardous materials. Officers testified that chemicals used during the production of methamphetamine are hazardous and highly combustible and that all items are destroyed under this policy. However, the officers documented the evidence by taking photographs of the items before they were destroyed. The record does not indicate that the police destroyed the items for any reason other

than the above stated policy. Therefore, defendant has not shown that the police destroyed the evidence in bad faith. Accordingly, destruction of items, which were appropriately documented, did not violate defendant's due process rights. *Youngblood*, 488 US at 57-58. Therefore, the trial court did not err in denying defendant's motion to suppress.

## E. SENTENCING

On appeal, defendant raises two issues related to his sentencing. First, he argues that the trial court abused its discretion by allowing the investigating officer to make a statement at defendant's sentencing. Defendant argues that the officer does not qualify as a "victim" under the Crime Victim's Rights Act, MCL 780.51 *et seq.*, and therefore, had no right to address the court at sentencing. Because permissible factors are considered by a sentencing court in imposing a sentence, this Court's review is limited to whether the court abused its discretion. *People v Poppa*, 193 Mich App 184, 187; 483 NW2d 667 (1992).

MCL 780.765 provides that a victim of a crime "has the right to appear and make an oral impact statement at the sentencing of the defendant." MCL 6.425(E)(1)(c) provides that a sentencing court must give "the defendant, the defendant's lawyer, the prosecutor, and the victim an opportunity to address the court of any circumstances they believe the court should consider in imposing sentence." Although MCR 6.425(E)(1)(c) mandates who must be permitted to address the court at sentencing, nothing in that court rule, or MCL 780.765, restricts the trial court from considering information from other persons. As this Court recognized in *People v Albert*, 207 Mich App 73, 74; 523 NW2d 825 (1994), "a sentencing court is afforded broad discretion in the sources and types of information to be considered when imposing a sentence." In *People v Waclawski*, 286 Mich App 634, 692; 780 NW2d 321 (2009), this Court concluded that it was not improper for the sentencing court to allow the victims' mother to give victim impact statements at sentencing even though they were not direct victims. Thus, regardless of the investigating officer's status as a "victim" under the Crime Victim's Rights Act, the trial court had discretion to allow the officer to address the court about the impact of methamphetamine laboratories on offenders, their families, and the community. Defendant has not offered any persuasive argument to demonstrate that the trial court abused its discretion by allowing the officer to address the court at sentencing. Moreover, we note that the officer did not provide any information that had not already been presented to the court through the testimony of the officer and other members of the undercover narcotics and methamphetamine response teams. Accordingly, defendant is not entitled to relief on this issue.

Second, defendant argues that the trial court abused its discretion by ordering that the sentences imposed in the 2014 case be served consecutive to the sentences imposed in the 2016 case without articulating on the record its reasons for imposing consecutive sentences. "[W]hen a statute grants a trial court discretion to impose a consecutive sentence, the trial court's decision to do so is reviewed for an abuse of discretion, i.e., whether the trial court's decision was outside the range of reasonable and principled outcomes." *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016).

Consecutive sentences may be imposed only when specifically authorized by statute. *People v Chambers*, 430 Mich 217, 222; 421 NW2d 903 (1988). A sentencing court has discretion to impose a consecutive sentence for a new offense committed while the offender was

-9-

free on bond in connection with proceedings stemming from the commission of another felony. MCL 768.7b(2)(a). "The purpose of the statute is to deter persons accused of one crime from committing others by removing the security of concurrent sentences should the conviction result on any or all of the crimes so committed." *People v Thompson*, 117 Mich App 210, 214; 323 NW2d 656 (1982), aff'd 423 Mich 427 (1985). A consecutive sentence should be imposed "only after awareness of a sentence already imposed so that the punitive effect of the consecutive sentences is carefully considered at the time of its imposition." *Chambers*, 430 Mich at 231 (internal quotation marks and citation omitted).

In this case, defendant was on bond for the 2014 charges when he again committed methamphetamine-related offenses that resulted in the 2016 charges and convictions. Consequently, consecutive sentences were authorized by statute. In imposing consecutive sentences under MCL 768.27b(2)(a), the trial court indicated that defendant committed the methamphetamine-related crimes in 2016 while on bond for committing methamphetamine-related crimes in 2014. The trial court also found that defendant imperiled not only himself to the dangers of the manufacture and use of methamphetamine, but also his daughter and another person, despite defendant knowing that the other person had a problem with methamphetamine. The trial court also noted that it had heard the "raw facts" of both cases. Additionally, the court's comment that it was imposing sentences at the lower end of the sentencing guidelines ranges for both the 2014 offenses and the 2016 offenses indicates that the trial court carefully considered the punitive effect of consecutive sentences. *Chambers*, 430 Mich at 231. On this record, we are not persuaded that the trial court's decision to impose consecutive sentences was an abuse of discretion. Accordingly, defendant is not entitled to relief.

Affirmed.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto