*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARK SHERMAN CAPLAN,

Defendant-Appellant.

UNPUBLISHED
April 15, 2021

No. 348823
Clare Circuit Court
LC No. 18-005785-FC

Before: SHAPIRO, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

Defendant was convicted by a jury of operating or maintaining a methamphetamine laboratory, MCL 333.7401c(1); MCL 333.7401c(2)(f), possession of methamphetamine, MCL 333.7403(2)(b)(*i*), obtaining pseudoephedrine to make methamphetamine, MCL 333.17766c(1)(d), resisting or obstructing a police officer, MCL 750.81d(1), operating while intoxicated (OWI), MCL 257.625(1)(a), and use of methamphetamine, MCL 333.7404(2)(a). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to serve prison terms of 10 to 40 years for operating or maintaining a methamphetamine laboratory, 6 to 40 years for possession of methamphetamine, 4 to 40 years for obtaining pseudoephedrine to make methamphetamine, 3 to 15 years for resisting or obstructing a police officer, 93 days for OWI, and one year for use of methamphetamine. Defendant appeals as of right. We affirm.

## I. BACKGROUND

In January 2018, Deputy Joshua Loudenslager with the Clare County Sheriff's Department was dispatched to the intersection of Mannsiding Road and Clare Avenue. When Deputy Loudenslager arrived, he noticed an ambulance unit parked next to a Mercury Cougar, which was parked in the center of the intersection. Defendant, the driver, and Samuel Polen, the passenger, were unconscious. Defendant was arrested because after being removed from the vehicle, he began struggling with Deputy Loudenslager. After securing defendant, Deputy Loudenslager performed a pat-down search and felt a bundle in defendant's coat pocket. The bundle contained a baggie with 26 pills. When Deputy Loudenslager told Polen to empty his pockets, Polen pulled out a loose pill and threw it to the ground. Polen was also arrested and placed in a separate patrol car.

-1-

A black duffle bag was found in the vehicle, which contained, among other things, a pill grinder, Coleman fuel, pipe cleaners, coffee filters, cold packs, and a lithium battery. The items in the duffle bag, which were covered in a white powdered substance, were destroyed and not dusted for fingerprints. A detective testified that it is Drug Enforcement Agency and Michigan State Police protocol to destroy evidence related to the production of methamphetamine because of the hazardous nature of the items. Deputy Loudenslager later learned that the vehicle was registered to Tracy McClellan.

At the beginning of the second day of trial, the prosecution informed the trial court that it was planning to file a motion in limine to prevent defendant from "bringing up any alleged drug activity" by McClellan. The prosecution filed the motion and the trial court addressed the motion before McClellan took the stand. The trial court concluded that defendant could ask about "drug use or drug activity" and that if McClellan invoked her Fifth Amendment privilege against self-incrimination, "we can stop the questioning." McClellan testified that although she owned the vehicle, she did not give defendant permission to use the vehicle. She also testified that she did not own the black duffle bag. Following this testimony, defense counsel asked McClellan if she had "ever used drugs in the past." McClellan responded, "Am I on trial here?" After a brief bench conference, defense counsel modified the question and asked McClellan if she had used drugs in the past two years. The trial court told McClellan that if she thought she "could be charged with a crime" for her response, she could assert her Fifth Amendment right and refuse to answer the question. McClellan testified that she understood defense counsel's question and that she was "going to take the Fifth Amendment." McClellan continued to testify and respond to defense counsel's other questions, including testifying that she accidently left the keys in the ignition.

Photos of the bundle and the baggie with the pills were admitted at trial. Defendant testified that he did not recognize the bundle and that he recognized the baggie with the pills in it only from the trial. The prosecution called John Gross, a pharmacist, as a rebuttal witness. Gross testified that he was asked to identify the content of the pills in the baggie and that there were two types of pills in the baggie, both of which contained Sudafed.

Defendant filed a motion for a new trial and to correct invalid sentence, raising the same arguments as he does on appeal, which the trial court denied. This appeal followed.

## II. DESTRUCTION OF EVIDENCE

First, defendant argues that the destruction of the evidence in the duffle bag violated his due-process rights. We disagree.

A challenge to a defendant's due-process rights is a constitutional question we review de novo. *People v Smith*, 319 Mich App 1, 5; 900 NW2d 108 (2017). It is undisputed that the evidence in the duffle bag would have been, at best, only *potentially* exculpatory because Deputy Loudenslager did not believe any fingerprints would have been recovered. "When the evidence is only 'potentially useful,' a failure to preserve the evidence does not amount to a due-process violation unless a defendant establishes bad faith." *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017), quoting *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988).

Nothing in the record indicates that the destruction of the items in the duffle bag was done in bad faith. The testimony established that the items were destroyed as a matter of standard procedure. A showing that evidence was destroyed in the course of implementing a routine procedure generally contravenes a finding of bad faith. *United States v Garza*, 435 F3d 73, 75 (CA 1, 2006).[1] See also *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992) ("[T]he routine destruction of taped police broadcasts, where the purpose is not to destroy evidence for a forthcoming trial, does not mandate reversal."). Accordingly, defendant has failed to meet his burden of establishing bad faith.

## III. FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION

Second, defendant argues that the trial court erred by failing to ascertain the basis for McClellan's invocation of her Fifth Amendment privilege against self-incrimination and that this error deprived him of his right to confront the witness. Defendant is not entitled to relief because he cannot establish prejudice.

Generally, whether a defendant's right to confront witnesses has been violated is a constitutional question that we review de novo. *People v Jemison*, 505 Mich 352, 360; 952 NW2d 394 (2020). However, because defendant did not object to McClellan's invocation of the Fifth Amendment at trial, we review defendant's argument for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

A criminal defendant has the right to be confronted by the witnesses against him or her. US Const, Am VI; Const 1963, art 1, § 20. "The Confrontation Clause is primarily a functional right in which the right to confront and cross-examine witnesses is aimed at truth-seeking and promoting reliability in criminal trials." *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012) (quotation marks and citation omitted). Further, the United States and Michigan Constitutions guarantee that no person shall be compelled to be a witness against himself or herself. US Const, Am V; Const 1963 art 1, § 17. A witness may invoke the privilege against self-incrimination when there is a reasonable basis to fear incrimination from questions. *People v Dyer*, 425 Mich 572, 578; 390 NW2d 645 (1986). "[A] trial court may compel a witness to answer a question only where the court can foresee, as a matter of law, that such testimony could not incriminate the witness." *Id*. at 579.

Because the trial court stated that "it may have been useful to have made a more particularized inquiry of [McClellan's] basis for invoking the Fifth for the record," we assume for purposes of this appeal that the trial court erred by failing to make such an inquiry. However, defendant is not entitled to relief because he cannot establish prejudice.

Deputy Loudenslager suggested that McClellan was involved in criminal drug activity when he testified that McClellan "had some issues with Deputy Feger and some of the people that she has hung out with, and some drugs have been removed during them [sic] stops." McClellan had already testified that she had not used drugs near the time of the offense. Furthermore, even

---

[1] Decisions of federal courts of appeals are not binding but may be considered for their persuasive value. *People v Bosca*, 310 Mich App 1, 76 n 25; 871 NW2d 307 (2015).

if McClellan had responded to defense counsel's question whether she had used drugs in the past two years, she testified that she did not own the duffle bag. Defendant argues that possession was the only issue in this case, and he was not limited in his ability to cross-examine McClellan about this key issue. Defendant has failed to establish that plain error affected his substantial rights. See *Carines*, 460 Mich at 763.

## IV. EXPERT WITNESS

Third, defendant argues that the trial court erred by permitting Gross to testify as a rebuttal witness. Again, defendant cannot establish prejudice.

Generally, we review a trial court's decision to admit rebuttal testimony for an abuse of discretion. *People v Steele*, 283 Mich App 472, 485-486; 769 NW2d 256 (2009). However, because defendant did not object to Gross's testimony at trial, we review defendant's argument for plain error affecting his substantial rights. *Carines*, 460 Mich at 763.

Here, regardless of whether the content of Gross's testimony was otherwise appropriate rebuttal testimony, it is undisputed that the prosecution failed to timely disclose Gross as an expert witness under MCR 6.201(A)[2] and MCL 767.40a(3).[3] Nevertheless, defendant cannot establish prejudice. Defendant had the opportunity to cross-examine Gross but declined to do so. To the extent that defense counsel did not cross-examine Gross because he felt unprepared, defendant did not allege that he needed more time to prepare for Gross's testimony. Furthermore, defendant fails to allege how additional time to prepare for Gross's testimony could have made a difference at trial. Additionally, the jury had already heard testimony that Sudafed tablets were found. Because defendant knew establishing that the 26 pills contained pseudoephedrine was an element of the

---

[2] MCR 6.201(A) provides, in relevant part:

> In addition to disclosures required by provisions of law other than MCL 767.94a, a party upon request must provide all other parties:
>
> (1) the names and addresses of all lay and expert witnesses whom the party may call at trial; in the alternative, a party may provide the name of the witness and make the witness available to the other party for interview; the witness list may be amended without leave of the court no later than 28 days before trial;
>
> * * *
>
> (3) the curriculum vitae of an expert the party may call at trial and either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion . . . .

[3] MCL 767.40a(3) provides that "[n]ot less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial."

-4-

charge of obtaining pseudoephedrine to make methamphetamine and Gross's testimony was merely cumulative, defendant has failed to establish that his substantial rights were affected by the trial court's error in admitting Gross's testimony. See *Carines*, 460 Mich at 763.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that his counsel provided ineffective assistance by failing to "timely object to the issues presented in the preceding subsections." To the extent defendant is arguing that his counsel should have objected to the destruction of the evidence in the duffle bag, he cannot overcome the presumption that the failure to object was sound trial strategy. Defendant also cannot overcome the presumption that the failure to request that the trial court inquire into McClellan's assertion of the Fifth Amendment was sound trial strategy. Further, defendant makes no argument as to why he was prejudiced by his counsel's alleged deficient performance in failing to object to Gross's testimony.

Generally, an ineffective assistance of counsel issue presents a "mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). However, "[b]ecause the trial court did not hold an evidentiary hearing on defendant's claim that he did not receive the effective assistance of counsel, there are no factual findings to which this Court must defer, and this Court's review is for mistakes that are apparent on the record alone." *People v McFarlane*, 325 Mich App 507, 527; 926 NW2d 339 (2018).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). There is a strong presumption that counsel's performance was sound trial strategy. *Lockett*, 295 Mich App at 187. Failing to raise a meritless argument or a futile objection does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

First, defendant cannot overcome the presumption that the failure to object to the destruction of evidence was sound trial strategy. The destruction of evidence allowed the jury to question what testing might have been revealed. Further, given that there was a white powdered substance covering the items and that Deputy Loudenslager testified that he did not believe any fingerprints would have been revealed had the items been dusted for fingerprints, it was sound trial strategy to not request a forensic evaluation of the items.

Second, defendant cannot overcome the presumption that the failure to request that the trial court inquire into McClellan's assertion of the Fifth Amendment was sound trial strategy. As previously stated, McClellan had already testified that she did not use drugs near the time of the offense, which was more relevant than whether she used drugs in the past two years. Therefore, it was sound trial strategy for defense counsel to not ask the trial court to inquire into the basis for McClellan's invocation of her Fifth Amendment privilege against self-incrimination because if the trial court compelled her to answer the question and she admitted to using drugs in the past two years, this would have likely reminded the jury of her previous testimony.

-5-

Finally, because the trial court plainly erred by allowing Gross to testify, defense counsel should have objected to his testimony. However, defendant has abandoned any argument as to the second ineffective-assistance-of-counsel prong. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue."). In any event, defendant cannot establish that there was a reasonable probability that the outcome would have been different had his counsel objected to Gross's testimony because as previously stated, the jury had already heard testimony that Sudafed was found.

## VI. OV 14

Finally, defendant has waived his challenge to the assessment of 10 points for offense variable (OV) 14.

Waiver is the "intentional relinquishment or abandonment of a known right." *Carines*, 460 Mich at 763 n 7 (quotation marks and citation omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted).

In this case, the trial court asked defense counsel, "I didn't ask you; anything with the sentencing guidelines? Any issues with that?" Defense counsel responded, "No, Your Honor. I think the guidelines are appropriate." Therefore, defendant waived the issue of whether his sentencing guidelines were properly scored because his counsel affirmatively approved of the scoring of the guidelines. See *Kowalski*, 489 Mich at 503. Accordingly, any error is extinguished and defendant may not raise the issue on appeal.[4] See *Carter*, 462 Mich at 215.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Mark J. Cavanagh
/s/ James Robert Redford

---

[4] Even if this issue had not been waived, we discern no error in the trial court's assessment of 10 points for OV 14.